## Arthur C. Loomis, Appellee, v. Federal Union Surety Company, Appellant.

1. CONTRACTS—*construction.* A company engaged in a contract for the erection of a railroad bridge became financially embarrassed, and to protect the company which was surety on its bond and to secure a loan from such company executed an assignment of all sums due, or to become due, to it under the contract, giving the surety company full power and control over all such moneys. At the same time the surety company executed a contract by which it agreed that it would pay over to the contractor all moneys received by it under the assignment under such restrictions as would insure their proper application to the discharge of labor and other claims incurred under the contract, and further that when such claims had been paid the surety company should retain a sum sufficient to reimburse it for its loan with interest. *Held,* that the two contracts should be construed together, and that by their clear terms the surety company was not entitled to apply funds in its hands received under the original contract to the payment of its loan before discharging the claim of a sub-contractor.

2. EQUITY—*pleading.* A decree based on a contract may be sustained where the general terms of such contract are alleged in such

manner as to support the decree although the contract is not set out at length.

3. APPEALS AND ERRORS—*waiver.* Error, if any, in awarding interest according to the rate authorized in a foreign state in the absence of appropriate averments in the bill is waived where not assigned as error or argued.

4. APPEALS AND ERRORS—*remittitur.* Where an item is erroneously included in the decree, but in their argument appellees consent to a remittitur of the amount of such item, the decree will be affirmed after such remittitur at the costs of appellees.

5. CORPORATIONS—*officers.* Where money due to a corporation under the terms of a contract is paid by check which is endorsed to an officer of the company and deposited to his account, a portion of it being applied in accordance with the terms of the contract, the corporation cannot contend that it is not responsible for the application of the residue.

Appeal from the Circuit Court of Coles county; the Hon. E. R. E. KIMBROUGH, Judge, presiding. Heard in this court at the October term, 1912. Affirmed on remittitur. Opinion filed March 18, 1913. Rehearing denied April 18, 1913.

**Statement by the Court.** Arthur C. Loomis and Daniel P. Rose, partners, of whom Loomis is the surviving partner, filed a bill in equity in the circuit court of Coles county against the Federal Union Surety Company, hereinafter called the Surety Company, the Collier Bridge Company, hereinafter called the Bridge Company, and the C., C., C. & St. Louis Railway Company, hereinafter called the Railway Company, for the purpose of compelling the Surety Company to pay to complainants certain moneys alleged to have been paid to it by the Railway Company under a sub-contract dated January 20, 1906, made between the Bridge Company and Loomis and Rose, under an original contract between the Railway Company and the Bridge Company.

The bill alleges that the complainants as sub-contractors entered into a written contract with the Bridge Company to perform certain work on the St. Louis division of the Railway Company for a certain definite compensation provided for in the sub-contract; that complainants entered upon the performance of the

work and prior to August 3, 1906, had received from the Bridge Company upon estimates on completed work all moneys due them except a retained percentage of $1,425.11; that the Bridge Company delivered to the Railway Company its penal bond in the sum of $20,-000, with the defendant Surety Company, as surety for the performance of the terms and requirements of the original contract between the Railway Company and the Bridge Company; that prior to August 3, 1906, the Bridge Company became financially embarrassed and unable to proceed with its contracts, and, as a result thereof, an agreement was made between the Bridge Company, the Surety Company and the Railway Company reciting that whereas the surety bond was in full force, and the Surety Company is or may be liable for claims and debts aggregating a large amount and may suffer great loss under said bond unless said claims are paid, and whereas the Surety Company has agreed to loan a certain sum of money to the Bridge Company to be used in the completion of the contract, and said Surety Company does not loan said money except on the execution of this instrument, now therefore, the Bridge Company assigns and transfers to the Surety Company all rights of the Bridge Company to all moneys now due or to become due from said Railway Company under the original contract on account of monthly assessments or retained percentage and all moneys due shall be paid by the Railway Company to the Surety Company; that thereafter the complainants continued in the performance of their contract and completed the same to the satisfaction of the engineer of the Railway Company; that monthly estimates were made after August 3, 1906, and payments made to the Surety Company thereon by the Railway Company, and the Surety Company paid to complainants $16,196.47 and that there is still due them under said contract $4,616.67 and interest.

It is also alleged that the Bridge Company is insolvent, and that the sole and only consideration for

the assignment to the Surety Company of the moneys due from the Railway Company to said Bridge Company was an agreement on the part of the Surety Company to distribute said moneys among complainants and other sub-contractors entitled thereto, in accordance with the estimate sheets attached to the vouchers issued and paid to the Surety Company, as assignee of the Bridge Company, for the purpose of protecting said Surety Company on said bond.

The bill further alleges that by virtue of such acts the Surety Company became a trustee holding said sums so paid by said Railway Company for complainants and that the Railway Company has paid to the Surety Company all the money due complainants.

The bill prays for an answer under oath by the Surety Company and that it set forth the contract entered into at the time of the assignment of August 3, 1906. A demurrer by the Railway Company on the ground that it was not a necessary party was sustained and the bill dismissed as to it. *Loomis v. Federal Union Surety Co.*, 163 Ill. App. 621.

The defendant Surety Company, after the demurrer to a plea in abatement had been sustained, answered the bill admitting the making of the original contract and the bond, but denying any knowledge of the sub-contract between the Bridge Company and complainants. It admits the insolvency of the Bridge Company and that the Bridge Company made the assignment of moneys due or to become due from the Railway Company, to the Bridge Company, and denies that the monthly estimates furnished any information of the amount of money due the complainants and that there is the sum of $4,616.47 due to complainants; it denies that the Railway Company made monthly estimates of the sums due complainants and issued vouchers to the Surety Company therefor, which were collected and appropriated by it. It sets forth that on August 3, 1906, concurrently with the making of the assignment, this defendant made a contract with the Bridge Com-

pany reciting, among other things, that whereas the Bridge Company is indebted to various parties and it is about to loan the Bridge Company $5,000, that in consideration of said assignment, the Surety Company agrees with the Bridge Company to pay over to the Bridge Company all moneys received by it under said assignment, under such restrictions as will insure the proper application of all such moneys to the discharge of the labor, material and other bills incurred by the Bridge Company in the prosecution of its work under said contracts, the Surety Company having the right to examine the books of the Bridge Company in reference to such work and to indicate the bills on which such payments shall be made, providing such payments be made on account of obligations incurred in the prosecution of the work under the several contracts; that when all the bills, accounts and obligations incurred by the Bridge Company in connection with the prosecution of its work under the several contracts shall have been paid, the said Surety Company shall retain a sufficient sum to reimburse it for the $5,000 loaned to the Bridge Company with interest; that when said contracts are completed and all bills and obligations paid connected with the prosecution of the work, including the $5,000 loan and interest shall be paid, and the obligation on the surety bond released the Surety Company will pay to the Bridge Company any balance of money remaining and turn over to it the personal property described in the bill of sale and not consumed; that if at the completion of the contracts the amount received shall be insufficient to pay the obligations incurred in the prosecution of the work and the $5,000 loan, the Surety Company may proceed to sell so much of the property of the Bridge Company as will be sufficient to pay the deficiency and return the balance to the Bridge Company.

The cause was heard by the court on the bill, answer, replication and report of evidence by the master. The court found that by the contract between the Bridge

Company and the Railway Company, the Bridge Company covenanted to promptly pay all sub-contractors and that the bond executed by the Bridge Company and the Surety Company was upon condition that the Bridge Company should perform all the terms and conditions of the contract; that the sum received by the Bridge Company from the Railway Company for said work was ten per cent. more than the sum to be paid the complainants by the Bridge Company; that by the assignment and contract of August 3, 1906, between the Bridge Company all moneys received by it under said assignment under such restrictions as would insure the proper application of all such moneys to the discharge of labor, material and other bills incurred by the Bridge Company in the prosecution of its work under the contract, and when all the accounts and obligations incurred in such work shall have been paid, the Surety Company should reimburse itself for the $5,000 loan and interest; that the contract between the Bridge Company and complainants was executed and the work performed in the state of Indiana; that the legal rate of interest in that state is six per cent.; that complainants fully executed their contract and the Surety Company had received the money for such work from the Railway Company; that there had been reserved by the Bridge Company on August 1, 1906, ten per cent. of the sum due complainants, being $1,425.41, and the same had been reserved by the Railway Company from the Bridge Company; that after the first day of August monthly estimates were made out by the engineer with attached vouchers and checks less the ten per cent. retained and delivered to the Surety Company as assignee of the Bridge Company showing the work done by the complainants; that for work done after the 1st day of August there was retained the further sum of $1,476.69, being ten per cent. of the compensation due complainants exclusive of the said ten per cent. $1,435.27, that the Surety Company received all of said sums from the Railway Com-

pany; that interest on the several sums due complainants from the date they were paid to the Surety Company at six per cent. to the date of the decree amount to $1,420.02 making a total of $5,757.42 due complainants and that the Surety Company wrongfully diverted the sums so paid to it and rendered a decree for $5,757.42 against the Surety Company in favor of complainants. The Surety Company appeals.

H. A. NEAL, for appellant; HENLEY & BAKER, of counsel.

VAUSE & HUGHES, for appellee.

MR. PRESIDING JUSTICE THOMPSON delivered the opinion of the court.

The appellant contends that it is not liable to complainants either under the bond executed by it to the Railway Company as surety for the Bridge Company, or under the contracts made between the Bridge Company and the Surety Company when the Bridge Company became embarrassed on August 3, 1906, for the ten per cent. withheld before August 3, 1906, from the complainants until the completion and acceptance of the work, and the work done after August 3rd, by the complainants all of which, under the assignment by the Bridge Company, was paid to the Surety Company.

When the work was finally completed the evidence shows that it was found there was a loss on the work done by other sub-contractors. In arriving at this loss the Surety Company adds to the cost of the work the loan of $5,000 and interest made by the Surety Company to the Bridge Company on August 3, 1906. It was found that final payment made to the Surety Company by the Railway Company, after the Surety Company had retained the amount of $5,000 loan and interest would only pay the sub-contractors sixty-nine per cent. of the amount due them. All the sub-contractors

except complainants received sixty-nine per cent. of the amount due them in full of their respective claims, and the Surety Company still holds in the hands of its treasurer the sixty-nine per cent. of the sum due complainants, and the $5,000 and interest applied by it on the loan of August 3, 1906.

The Railway Company on April 4, 1907, paid to the Surety Company, as assignee of the Bridge Company, its final payment on the work done by complainants under their sub-contract, together with money due for work done by other sub-contractors. One W. T. Durbin was at that time president of the Surety Company. The Surety Company endorsed the check to Durbin, and he deposited it to his account and paid part of the money received to other sub-contractors and it is admitted that Durbin, who is now treasurer of the Surety Company, still holds $3,038.11 of said sum then received for the complainants. The $3,038.11 is sixty-nine per cent. of the principal sum due them. The Surety Company claims it is not liable for the money Durbin holds, that it turned over to him. The claim of the Surety Company is not tenable. The money Durbin holds that was turned over to him as an officer of the Surety Company by the Surety Company must be considered as held by the Company. There is no disagreement, or at least it is not disputed, but that the principal sum claimed by the complainants as found by the court to be due them is the correct sum due to complainants.

If by virtue of the contracts of August 3, the Surety Company obligated itself to collect the money earned by complainants and to pay them out of the money collected then this decree is substantially right.

The assignment made by the Bridge Company was made for the purpose of securing the Surety Company against loss on its bond, and eliminates the Bridge Company from contesting the disposition of the moneys received from the Railway Company. It gives the Surety Company "full power and control over

all said moneys.'' This assignment was made with the knowledge of the Railway Company and in contemplation of the interest of all parties. The contract made by the Surety Company was made at the same time and in consideration of the assignment. These two instruments must be construed as one contract. The contract made by the Surety Company after certain recitals provides, ''First:—That the Federal Union Surety Company will pay over to the said Collier Bridge Company 'all moneys received by it under assignments hereinbefore mentioned under such reasonable restrictions as will insure the proper application of all such moneys to the discharge of labor, material and other bills incurred by the Collier Bridge Company in the prosecution of work under said contracts.' '' ''Second:—When all the bills, accounts and obligations incurred by the Collier Bridge Company in connection with the prosecution of the work under the said several contracts shall have been paid the said Surety Company shall retain from any moneys assigned to it, as aforesaid a sufficient sum to reimburse it for the Five Thousand Dollars this day loaned to the Collier Bridge Company with interest thereon.''

The contract clearly provides that all the obligations of the Bridge Company incurred in the prosecution of the work under the several sub-contracts shall be paid by the Surety Company as assignee of the Bridge Company before the Surety Company had the right to repay itself the $5,000 loan. The Surety Company has on hand of the moneys received from the Railway Company the $3,038.11 held by its former president, now treasurer, for the complainants and the $5,000 appropriated by it wrongfully to pay the loan that it had made to the Bridge Company without having paid the debt due to complainants, and on which it has obligated itself to apply the money received by it from the Railway Company before paying the debt to itself.

It is also insisted the allegations of the bill are not

sufficient to sustain the decree even if the evidence is sufficient. The bill alleges that the sole consideration for the assignment of moneys due the Bridge Company to the Surety Company was an agreement on the part of the Surety Company to distribute said moneys among the complainants and other sub-contractors in accordance with the estimate sheets and vouchers issued and paid to the Surety Company, and that the Surety Company became a trustee holding said sums paid by the Railway Company for and on behalf of complainants. While the complainants might have amended their bill after the coming in of the answers and set up the contract at length the allegations of the bill sufficiently allege the general terms of the contract which sustains the decree.

There is no averment in the bill either that the contract was made or that the work was performed in the state of Indiana or that the legal rate of interest in Indiana is six per cent., although the evidence shows that the contract was made and the work was all done in Indiana and that the legal rate of interest in Indiana is six per cent. The appellant has neither assigned error on the question of interest or mentioned that question in its argument and any error, if there be any on that question, is waived.

The appellees presented a claim for $187.85 for extras with interest thereon amounting to $60.17. The claim for the principal sum of the extras was disallowed but the appellees admit that through some oversight the item of $60.17 interest is included in the decree. The decree is therefore excessive and erroneous to that amount. The appellees in their argument consent to an order for a remittitur of the sum of $60.17. The decree is therefore affirmed for the sum of $5,697.25 at the costs of appellee.

Decree affirmed in part.

*Affirmed.*